* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of injury for this claim is October 1, 2003.
2. On this date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
3. On this date, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On this date, the defendant-employer employed three or more employees.
5. Defendant-employer is insured by Liberty Mutual Insurance Company.
6. Plaintiff's average weekly wage was to be determined by a Form 22.
7. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Plaintiff's work attendance for 2203
 b. Stipulated Exhibit #2 — Medical record from Guilford Neurological Associates June 23, 2003 (return to work note)
 c. Stipulated Exhibit #3 — Medical record from Guilford Neurological Associates June 23, 2003
 d. Stipulated Exhibit #4 — Lorillard Tobacco Company Clinical Chart August 19, 2003
 e. Stipulated Exhibit #5 — Plaintiff's Answers to Responses to Defendants' First Set of Interrogatories and Request for Production of Documents
 f. Stipulated Exhibit #6 — Lorillard Tobacco Company clinical Chart October 1, 2203
 g. Stipulated Exhibit #7 — Medical record from Guilford Neurological Associates October 6, 2003
 h. Stipulated Exhibit #8 — List of Accident and Health Benefits paid to Plaintiff
 i. Plaintiff's Exhibit #1 — Diagram of work area where Plaintiff was allegedly injured (admitted for illustrative purposes only) *Page 3 
 j. No Form 22 was submitted in this matter, however, based on information received from Defendants, the Plaintiff's average weekly wage results in a compensation rate of $545.78.
8. The issues before the Full Commission are whether plaintiff sustained an injury by accident or an aggravation of a pre-existing back condition on October 1, 2003 and, if so, to what benefits is plaintiff entitled under the Act?
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the hearing before the Deputy Commissioner, plaintiff was 53 years of age. She had been employed by defendant-employer since 1998 as a packing operator. Plaintiff's job consisted of watching cigarettes on a conveyor belt to make certain the packages were correctly filled and refilling materials such as foil and cellophane.
2. Plaintiff had to check a pack of cigarettes every five minutes but other than that, could sit on a stool that was provided to her by defendant-employer. The stool provided to her was a bar-type stool with a back.
3. Beginning in February 2002, plaintiff presented to Dr. Ernesto M. Botero, a neurologist for back conditions unrelated to her employment. Plaintiff's problems appeared to have come on spontaneously and were not secondary to any injury or automobile accident. An MRI revealed degenerative disc disease. According to Dr. Botero's testimony, a person with degenerative disc disease could develop a herniation without trauma or a specific injury. *Page 4 
4. Plaintiff was eventually diagnosed as having a left L4-5 herniated disc and Dr. Botero indicated plaintiff most likely developed this herniation for basically no reason whatsoever other than having degenerative disc disease.
5. On February 28, 2002, Dr. Botero performed a diskectomy and foraminotomy with a partial facet removal. Subsequent to this surgery in 2002, plaintiff complained of pain in her left leg that had caused her to fall twice thereby increasing the pain in her back. Plaintiff's back pain continued to increase and Dr. Botero ordered an MRI that was performed May 15, 2002, which revealed scar tissue and the possibility of a recurrent herniated disc. Dr. Botero was concerned that plaintiff could have had another spontaneous herniation without any type of trauma or injury. Dr. Botero performed exploratory surgery on June 4, 2002, and plaintiff was found to have a recurrent herniated disc at the L4-5 level on the left.
6. On June 20, 2002, plaintiff related to Dr. Botero that the night before she suddenly developed a sharp onset of pain that went across her spine and down her left leg without any precipitating event. On August 5, 2002, Dr. Botero opined plaintiff had a recurrent radiculopathy now involving both of her legs and that whatever problem she had with her spine was now causing problems on the right side. Dr. Botero opined that it is not unusual for someone with degenerative disc disease to continue to develop problems.
7. On January 12, 2003, plaintiff presented for treatment and this time she was complaining of pain radiating into her right leg. Her prior complaints had been of pain in her left leg. X-rays showed scar tissue at L4-5 and L5-S1. Dr. Botero opined that these complaints could be an indication of possible disc involvement on the opposite side and ordered a new MRI. Dr. Botero opined that the results of the MRI had changed completely and were "quite dramatic." At this time, plaintiff had no space between bones 4 and 5 and quite a bit of *Page 5 
inflammation at the recurring disc. The absence of this cushion between the bones indicated an acceleration of the degenerative disc disease without any type of trauma or injury. Dr. Botero was surprised that the degeneration had happened so quickly.
8. Dr. Botero performed a fusion surgery at L4-5 and L5-S1 on April 7, 2003. This contrasted with the prior two surgeries that had only involved one level. Dr. Botero opined that the L5-S1 level had been compromised as a result of plaintiff having degenerative arthritis which caused her facets to be loose.
9. Dr. Botero returned plaintiff to work without restriction on June 30, 2003, but told her not to bend and that if she had to pick up something from the floor she was to squat or kneel. On June 30, 2003, plaintiff returned to the same job she had prior to taking a leave of absence for her surgeries.
10. Subsequent to her return to work, plaintiff continued to have back pain that caused her to limp and affected her ability to perform her job. Plaintiff's co-employees helped her perform her job on various occasions. On at least one occasion in August 2003, the pain was substantial enough for plaintiff to go to the medical department for treatment and to cause her to miss approximately one and one-half days of work. Plaintiff informed the medical department staff that she had leaned over to pick up a pack of cigarettes that she had dropped on the floor twisting her back and developed left buttock and left leg pain that radiated to her knee. She further related that she had done something that she had been instructed by the doctors not to do, which was to bend straight over. Defendant-employer's clinical chart introduced into evidence at the hearing before the Deputy Commissioner indicated that plaintiff said the incident was "not work-related" and "not related to anything I did at work." *Page 6 
11. On September 4, 2003, plaintiff had a follow-up visit with Dr. Botero and was still experiencing sciatic pain.
12. On October 3, 2003, the machine on which plaintiff was working had been shut down to fix a glue pot. After plaintiff cleaned her work area, she sat on her stool and was facing Aaron Sams, a co-worker and Clyde Smithy, another co-worker. Plaintiff testified that as she was sitting watching Mr. Sams and Mr. Smithy, her supervisor, George Nauman, approached her from her right, poked her in the back, and startled her in such a way that she rose up on the seat turning to the right, and sat down hard in a twisted manner on the stool, experiencing immediate pain in her back. Although Mr. Sams and Mr. Smithy testified at the hearing before the Deputy Commissioner, neither one could corroborate plaintiff's testimony regarding an incident with her supervisor, Mr. Nauman.
13. On October 6, 2003, plaintiff presented to Dr. Botero, with complaints of increased pain radiating to her left foot, which she stated was caused when her supervisor came up behind her and hit her in the back, causing her to fall to the floor. Dr. Botero opined that this incident more likely than not caused the problems with which plaintiff presented in October 2003. However, Dr. Botero also opined that more likely than not and to a reasonable degree of medical certainty the bending incident in August 2003 was the source of the problems plaintiff was having instead of this event with a supervisor.
14. Dr. Botero further opined to a reasonable degree of medical certainty and more likely than not that the treatment he rendered to plaintiff from October 2003 to the time of the hearing before the Deputy Commissioner was secondary to the act of plaintiff bending over to pick up a pack of cigarettes on August 2003. *Page 7 
15. Dr. Botero also opined that it was more likely than not that the need for plaintiff's surgeries and treatment after October 2003 was based solely on her degenerative disc disease.
16. There is insufficient evidence of record, including the medical testimony of Dr. Botero, from which to prove by the greater weight that plaintiff's back complaints were causally related to an October 3, 2003 incident or that the incident significantly aggravated her pre-existing back condition.
17. Plaintiff has failed to prove by the greater weight of the evidence that on October 3, 2003, she sustained an injury by accident or a specific traumatic incident arising out of and in the course of his employment with defendant-employer.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLULSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that on October 3, 2003, she sustained an injury by accident or a specific traumatic incident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Act must be, and hereby is denied. *Page 8 
2. Defendants shall pay the costs of this proceeding.
This __ day of February 2008.
S/________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/________________ LAURA KRANFIELD MAVRETIC COMMISSIONER
 S/________________ DANNY L. McDONALD COMMISSIONER *Page 1